## Daniel v. Holtclaw, et al.

(Decided October 27, 1914.)

### Appeal from Bell Circuit Court.

1. Execution—Purchasers Under—Notice.—The rights of a plaintiff in the execution, and as purchaser of real property thereunder are inferior to those of a subsequent purchaser without notice.

2. Lis Pendens—Notice—Subsequent Purchaser—Adverse Possession—Occupancy.—If, at the time of the subsequent purchase, the property was occupied and held adversely by another, the subsequent purchaser cannot be said to have been without notice of the claim of an occupant, and the occupant is not affected by it.

A. G. PATTERSON for appellant.

PATTERSON & INGRAM for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee, Holtclaw, lived in Lincoln County and had a debt against White Daniel, who lived in Bell County. He sent the claim to a practicing attorney in Bell County with general authority to take all needed steps to collect it. The attorney sued in the Magistrate's Court, and re- covered judgment, and, after a return of ''no property found,'' took a transcript to the circuit court and levied an execution on two lots in Pineville, Nos. 1 and 2, in block 7. In due course, the sheriff sold the lots at public sale. The proof shows these lots were worth $1,000. They were appraised at $300. They were bid in by the attorney for the benefit of Holtclaw at $104. In the next two or three days White Daniel went to the attor- ney and turned over to him by verbal agreement not only these two lots, but Nos. 3, 4 and 5, in the same block, with

directions to collect the rents and after payment of taxes, repairs, upkeep, and reasonable compensation to the attorney for his trouble, the balance to be applied on Holtclaw's debt, until satisfied. In this way, Holtclaw's attorney had possession of the property for about 13 months. The property rented for $10 per month. In October, 1912, about ten months after the attorney took over the property, White Daniel, thinking, as he swears, that sufficient rents had been collected by the attorney to pay the Holtclaw debt, transferred the lots in question, along with other real estate, by deed of general warranty, to his brother, John Wesley Daniel, who is the appellant here. The recited consideration was "$1 and other valuable considerations." But White Daniel and his brother, the appellant, admit that the following was the real consideration: White Daniel purchased of the appellant some land in Iowa, and on this purchase he owed to the appellant a balance of $5,400. The deed above referred to was executed to further secure the payment of this $5,400.

There is no satisfactory proof that the attorney ever informed Holtclaw of the progress he had made, or of any steps taken—certainly he had not accounted to Holtclaw for any collections. During the latter part of November, 1912, Holtclaw went to Bell County and saw the attorney and the situation was then laid before him. The attorney admitted that he had collected part of the debt in the way above explained, that is, that the property had been sold by the sheriff under execution, and bid in by the attorney for the benefit of Holtclaw, but that no deed had ever been made, because of the arrangement with White Daniel for collection of the rents and liquidation of the judgment. The attorney promised to send some money to Holtclaw at a later date. This did not satisfy Holtclaw, for he wanted the money then. Another thing troubled Holtclaw as much or more than this—the attorney insisted that a reasonable fee was one-half of the amount collected. Holtclaw was unwilling that the attorney should have any more than 10 per cent. The next day Holtclaw employed another attorney, and, with the knowledge that the lots had been sold under execution, they went to the sheriff and caused him to make a deed to Holtclaw.

In a short while, the appellant, John Wesley Daniel, who claimed under the deed from his brother made in October, brought this action to enjoin Holtclaw from

claiming or interfering with the lots, and to cancel the sheriff's deed. The lower court compelled an accounting by the attorney and ascertained that he had collected $125 and expended in the way of repairs, taxes and compensation for his services $59.50. This left $65.50 to be applied on Holtclaw's debt. The court then held that the alleged deed from White Daniel to his brother, the appellant, was a mortgage and not a deed. The sheriff's deed to Holtclaw was declared void and Holtclaw was enjoined from setting up claim or title thereunder, but by reason of the judgment, execution, levy, and sale, Holtclaw was adjudged a first lien on the two lots for the balance of his judgment, after crediting the collection made by his attorney—the balance being $44.04. The lots were ordered sold by the master commissioner and with the proceeds Holtclaw's debt was ordered to be satisfied and the balance paid to the appellant, Wesley Daniel, holder of the second lien.

John Wesley Daniel appeals from this judgment and insists that he was an innocent purchaser for value, without any notice of the Holtclaw judgment, execution, or sale, and, therefore, the lower court erred in ordering a sale of the property or a prior lien in favor of Holtclaw.

Appellant procured and recorded his deed some time prior to the time when the sheriff made a deed to Holtclaw. It is admitted that no *lis pendens* notice of the execution lien or sale was ever filed or recorded in the county clerk's office as required by section 2358a, Kentucky Statutes. Therefore, appellant insists that he is an innocent purchaser and is protected by the *lis pendens* statute, *supra,* which, among other things, provides:

"No attachment or execution hereafter issued, nor any levy or sale under either, shall in any manner affect the right, title to, or interest of a subsequent purchaser, lessee or encumbrancer without notice thereof. * * *."

This court has repeatedly held that if the rights of the plaintiff under the execution and as purchaser thereunder shall prevail over a subsequent purchaser without notice, he must have complied with the provisions of the *lis pendens* statute.

In Conley v. Mayo, 157 Ky., 445, in discussing this question, and under somewhat similar state of facts, the court held:

"But as the necessary steps mentioned were not taken, appellant's claim to the land in controversy must

yield to that of appellee (subsequent purchaser without notice)."

As said in the case of Trapp's Admr. v. Bailey, 152 Ky., 369:

"This section has been frequently construed and held to apply to actions of all kinds in which it is sought to subject in any manner real estate against a purchaser for value without notice of the lien sought to be enforced."

To the same effect is White v. Manning, 26 Ky. L. R., 887; Ponder v. Boaz, 23 Ky. L. R., 2429.

Undoubtedly appellant brings himself within the provisions of the statute, unless in some other way he had notice of the claim of Holtclaw and took the deed from his brother notwithstanding. Under the law in our State, a real estate purchaser must take notice of record and of persons in possession. The *lis pendens* statute was not intended to restrict inquiry to the record only. Neither was it intended to repeal the Champerty Statutes.

Notwithstanding a failure to comply with the *lis pendens* statute, the question still is whether the purchase is for value and in good faith, that is, without notice. In the case at bar, the appellant if not an outright purchaser is, at least, one for value, or, as the lower court held, an encumbrancer, and the only question left is whether in the absence of a filed or recorded *lis pendens* notice, the fact that the property was then in the adverse possession of the other was sufficient to put him on notice and to that extent invalidate his purchase. As we have already indicated, this *lis pendens* statute was not intended to repeal the Champerty Statute.

Section 210, of the Champerty Statutes, provides that:

"All sales or conveyances, including those made under execution, of any lands or the pretended right or title to the same of which any other person at the time of such sale, contract or conveyance, has adverse possession, shall be null and void."

At the time appellant took his deed the lots in question were in the possession of Holtclaw's tenant. The possession of the tenant under contract with Holtclaw's attorney was Holtclaw's possession. White Daniel, appellant's vendor, by the arrangement above referred to, unquestionably surrendered control and possession. The attorney was to keep the property rented out, collect the rents, pay the taxes, and do necessary repairs. This amounted to control and possession of the property. He was to continue this until the net proceeds from the

rents satisfied Holtclaw's judgment. At the time appellant took his deed, this arrangement was in force and it seems to us to be of such a nature as to amount to a possession sufficient to put the purchaser on notice, and to render a purchase under the circumstances ineffective in so far as it related to the occupant.

From these circumstances we have concluded that the judgment of the court should be affirmed, and it is so ordered, for in our opinion it seems to do substantial justice to all the parties concerned.